James S. Brown, J.
Before the days of paid city firemen, the various small communities now making up the five boroughs had volunteer firemen just as they do in some suburban communities today. There came a time when the city, in recognition of its indebtedness to these self-sacrificing citizens, created funds to provide financial assistance to those of them and their widows who became indigent and disabled.
One such fund now before the court, known as the Exempt Firemen’s Benevolent Fund of the County of Kings, has been functioning for many years. It now has some forty-one beneficiaries, whose average age is over eighty, who in 1952 received relief amounting to $24,485. It is presently administered by five trustees. Under chapter 19 of the Administrative Code under which they had been acting, only members could so serve. Therefore they are all over eighty years of age.
In 1950, at the Mayor’s request, the budget director made a survey of such funds and rendered a lengthy report, dated November 15,1950, entitled “ A study of the use of certain New York City Revenues for the benefit of the City’s indigent Volunteer Firemen and their families.” The report pointed out that there were several of these funds still operated by trustees; that *224 volunteer firemen and their widows, then numbering 1,315 and 903, respectively, could, in cases of indigency, apply for benefits therefrom; and that the payments by the trustees were supposed to follow a determination of indigency by the associations but there appeared to be a failure to use objective standards to determine indigency, and that the definition of indigency “ becomes more inclusive as funds become more available and membership decreases.” It also made references to the advanced age of the trustees and the decreasing number of persons entitled to benefits and directed attention to various problems and weaknesses requiring administrative changes.
It also related how in the instance of two of such funds the deaths of individual trustees necessitated Supreme Court proceedings for receiverships’ and judicial settlements of accounts, and that by amendments to the Administrative Code the further administration of those particular funds had already been turned over in its entirety to the New York City fire commissioner.
The report concluded: “ Briefly, the difficulties attendant upon present administration of the law are due to the insufficient standards of indigency, the problems of follow-up and the lack of continuity in the bodies authorized to administer the law. It appears evident that the aids to indigent volunteer firemen should be administered by a continuing body making investigations relative to the needs of new beneficiaries. Since the existing fund operations are relatively small no new administrative agency should be created unless it is established that existing city departments cannot assume the city’s commitments on behalf of volunteer firemen and then recommended the enactment of legislation to effectuate the transfer of the administration of all such funds to the fire commissioner as trustee.
As a result, Local Law No. 131 of the City of New York for 1952 was passed to take effect December 15,1952. That directed that the trustees of this fund now before the court turn over to the fire commissioner, as the new trustee thereof, all assets, books and records, a verified account, a list of all beneficiaries with their addresses and the amounts being paid them and dates of payments, and all data referring to the indigency of beneficiaries.
The trustees of other funds in other boroughs have complied but two of the five trustees of this Kings County fund refuse to go along. The fire commissioner, therefore, has brought this proceeding under article 78 to compel compliance.
These two answering trustees take the position that they hold their office and administer their functions by operation of State *225 law and that the city has no power to change that State law by a local law. This is their interpretation of the New York State Constitution (art. IX, § 12) and City Home Rule Law (§ 11, subds. 1, 2), which confer on every city the power “ to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government.” The respondents claim there is no “ property ” of the city in this fund and that its ‘ affairs or government ’ ’ are not involved either.
With that the court does not agree. The moneys which have been feeding this fund come from a 2% tax levied by the State on premiums paid to foreign insurance companies for fire insurance covering local property. The constitutionality of such tax was upheld in 1883 in Trustees of Exempt Firemen’s Benevolent Fund v. Roome (93 N. Y. 313), where the court reviewed the history of volunteer firemen and their organizations from colonial times.
There was legislation from time to time which eventually made provision for the collection of the fund in this city by the head of its fire department and the payment therefrom to the trustees of the various exempt firemen’s benevolent funds of specified percentages of the moneys so collected. Ten per cent was directed to be paid to the treasurer of the Firemen’s Association of the State of New York and the balance was to.be applied to the relief fund of the regular city fire department. This was the arrangement under the Greater New York Charter enacted in 1897. Thus it is to be seen that at an early date funds so derived were directed to be applied to the purposes of the regular (paid) fire department. This arrangement was extended by such charter to the Borough of Brooklyn (L. 1897, ch. 378, § 809).
The provisions of the present New York City Administrative Code continued that policy. Therein it is specifically provided that the tax collected in this city should be paid to the New York City fire commissioner (Administrative Code of City of New York, § B19-15.0) and after payment by him of 10% thereof “ to the Firemen’s Association of the State of New York for the endowment, benefit and maintenance of the Volunteer Firemen’s Home at Hudson, New York ” (Administrative Code of City of New York, § B19-29.0), the balance is to be applied in specific proportions in the various boroughs. In Brooklyn it is payable 68% to the trustees of the New York fire department pension fund and 22% to the trustees of the Exempt Firemen’s Benevolent Fund of the County of Kings.
*226 The history of these funds refutes the argument that the collection and application of the fund in this city is without relation to “ its property, affairs or government ” in such a way as would permit the local legislature, under the Constitution and home rule laws, to legislate with respect thereto as it has now done.
Urgent necessity for such legislation is made apparent by the showing that in 1952 petitioner paid to the respondents the sum of $56,738.44 or more than twice the amount needed by them; that under the constant formula to be applied according to the law as it was prior to the enactment of this Local Law No. 131 of the City of New York for 1952, and due to the deaths of potential beneficiaries, this excess of receipts over payments would be increased. It also appears that during 1952 the assets of this Kings County fund jumped from $175,351.80 to $202,882.68; and over $120,000 thereof was permitted to remain in a business bank without interest (in violation of Administrative Code of City of New York, § B19-33.0, subd. 4), resulting in a substantial loss of income.
Respondents contend that the city’s power of home rule legislation is expressly limited by section 12 of article IX of the Constitution so as to deny it the right to ‘ ‘ repeal or supersede any law enacted by the legislature relating to any pension or retirement system ”. On the other hand it is petitioner’s claim that such restriction applies only to the retirement systems “ resulting from payments into the pension fund of a retirement system, and the right to which does not depend on indigency but on retirement at a minimum specified age, and the number of years’ service.” It is such funds, typified by the New York City employees’ retirement system, petitioner argues, which are given contractual status and protection by the Constitution (art. V, § 7). Benefits paid under such retirement systems, it is urged, are not to be compared with “ donations ” provided for under the exempt firemen’s benevolent funds, and the use of the word “ pension ” in connection therewith (see Administrative Code of City of New York, § B19-33.0) is to be equated with the legislative use therein of the word “ donations.”
With that view the court agrees. Accepting, however, for the sake of the argument, the respondents’ contention to the contrary, the court still feels that Local Law No. 131 does not effect either a repeal or a superseder of the prior law, the provisions and purpose of which are kept intact, but only brings about a change in the administrative procedure thereof.
The motion is granted as prayed for. Settle order on notipe.